UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANGELA MEADE,

Plaintiff,

v.

JDM FINANCIAL LLC,
ANTHONY MICHAEL JOHNSON, and
HEATHER LEE VISCIOTTI,

Defendants.
_______________________________________/

COMPLAINT

## I. Introduction

1. Plaintiff is a victim of credit identity theft, whose stolen personal and financial information was used to create a counterfeit account and fake debt. Defendants are debt collectors and credit identity thieves who acquired the stolen information and counterfeit account, and then, falsely claiming to be attorneys and a law firm representing a major United States bank, contacted Plaintiff and Plaintiff's relatives, and falsely threatened Plaintiff with litigation, prosecution and other adverse consequences, and coerced the payment of money from Plaintiff.

2. Defendants have violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.,* Driver's Privacy Protection Act of 1994 ("DPPA"), 18 U.S.C. § 2721 *et seq*., Michigan Regulation of Collection Practices Act ("MRCPA"), M.C.L. § 445.251 *et seq.,* and Michigan Occupational Code ("MOC") M.C.L. § 339.901 *et seq*.

3. Defendants, along with other entities and individuals to be identified in discovery, are involved in a large, elaborate, and ongoing scheme to contact consumers across the country and falsely threaten litigation and other adverse consequences unless the consumers pay money to Defendants to supposedly satisfy counterfeit, paid, or time-barred debts. Defendants' scheme is sometimes known as "The Shakedown" or "The Shake."

4. These schemes are epidemic and are operated by thousands of entities located in and around Los Angeles, California, Jacksonville, Miami and Orlando, Florida, Buffalo, New York, Atlanta, Georgia, Charlotte, North Carolina, and Rock Hill, South Carolina.

5. On November 4, 2015, the Federal Trade Commission and other law enforcement authorities around the country announced the first coordinated federal-state enforcement initiative targeting deceptive and abusive debt collection practices. The "Operation Collection Protection" initiative is described by the FTC as a nationwide crackdown by federal, state, and local law enforcement authorities against collectors who use illegal tactics such as harassing phone calls and false threats of litigation, arrest, and wage garnishment. The initiative targets debt collectors who attempt to collect so-called phantom debts – phony debts that consumers do not actually owe. See www.ftc.gov/news-events/press-releases/2015.

6. On September 29, 2020, the "Federal Trade Commission, along with more than 50 federal and state law enforcement partners . . . announced a nationwide law enforcement and outreach initiative to protect consumers from phantom debt collection and abusive and threatening debt collection practices . . . [with two new FTC cases against companies that] were trying to collect debts they cannot legally collect or that a consumer does not owe – a practice known as phantom debt collection." See https://www.ftc.gov/news-events/press-releases/2020/

09/ftc-state-federal-law-enforcement-partners-announce-nationwide.

7. The Identity Theft and Assumption Deterrence Act, 18 U.S.C. § 1028, makes it a felony to "knowingly transfer, possess, or use, without lawful authority, a means of identification of another person with the intent to commit, or to aid or abet, or in connection with, any unlawful activity that constitutes a violation of Federal law . . . ." The act defines a "means of identification" to include an individual's "name, social security number, date of birth," and other information. It is an express violation of the FDCPA and Michigan law to commit a crime in connection with the collection of any debt.

## II. Jurisdiction

8. The Court has subject matter jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), 18 U.S.C. § 2724(a) (DPPA), and 28 U.S.C. § 1331. The Court has supplemental jurisdiction regarding Plaintiff's state law claims under 28 U.S.C. § 1367. The Court has personal jurisdiction over each Defendant because each Defendant purposefully availed itself/himself/herself of the privilege of acting in Michigan, by contacting and threatening Plaintiff by telephone, email and letter, with actual knowledge that Plaintiff resided and was physically present in Michigan when each of those communications took place, and caused Plaintiff's injuries to occur in Michigan.

## III. Parties

9. Plaintiff Angela Meade is an adult, natural person residing in Kent County, Michigan. Plaintiff is a "consumer" and "person" as the terms are defined and used in the FDCPA. Plaintiff is a "person" as the term is defined and used in the DPPA. Plaintiff is a "consumer," "debtor" and "person" as the terms are defined and used in the MRCPA and MOC.

10. Defendant JDM Financial LLC ("JDM") is a California limited liability company,

formed on or about March 15, 2019. According to the JDM California Statement of Information filed October 6, 2026 by Defendant Anthony Michael Johnson, the JDM principal office address is 30111 Technology Drive, Suite 130, Murrieta, California 92563, and is managed by Mr. Johnson. The JDM registered agent is LegalZoom.com, Inc. JDM uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. JDM regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. JDM is a "debt collector" as the term is defined and used in the FDCPA. JDM is a "regulated person" as the term is defined and used in MRCPA. Alternatively, JDM is a "collection agency" and "licensee" as the terms are defined and used in MOC.

11. According to the Workers' Compensation Insurance Rating Bureau of California, JDM operates at 30111 Technology Drive, Suite 150, Murrieta, California 92563, and currently maintains insurance for the JDM employees through Sequoia Insurance Company.

12. JDM operates using multiple fictitious business names registered with the Clerk for Riverside County, California, currently including: JDM Financial; Marathon Legal Advocate Work; Marathon Services; Marathon Portfolio Services; Marathon Judgement Solutions; Midland Legal Advocates; Midland Legal Services; and Midland L.A.W.

13. On July 7, 2022, Defendants registered through GoDaddy.com, LLC, the internet domain www.marathon-legal.com, that links to an active website that describes JDM as a consumer debt collection agency, telephone number 800-940-6918, supposedly operating at 888 Prospect Street, Suite 200, La Jolla, California 92037, but the address is merely a virtual office rented by Defendants from Regus. Defendants use the domain to communicate with consumers by email, using the address clientsupport@marathon-legal.com. Defendants' account with GoDaddy.com, LLC is maintained in the name of Defendant Anthony Michael Johnson,

telephone number 951-723-7363 and email address ajo92584@gmail.com, and services for the account are charged to a Visa credit card in the name of Defendant Tyler Duane Stone, telephone number 909-917-8424. Defendants have used the account to register additional internet domains, including: www.arrowfin.net; www.jdmbillpay.com; www.thejdmcorp.com; www.midland-legal.com; www.gm-judgements.com; www.marathoncollect.com; and www.ddrcollect.com. Queries to www.midland-legal.com and www.gm-judgements.com are automatically redirected to the website for www.marathon-legal.com.

14. JDM through its employees and agents directly and indirectly participated in the efforts to collect an alleged debt from Plaintiff that are described in this Complaint.

15. JDM through its employees and agents directly and indirectly participated in the acquisition, disclosure and use of Plaintiff's private, personal, financial and account information, without a permissible purpose, as described in this Complaint.

16. Defendant Anthony Michael Johnson is a natural person, age 32, purportedly residing at 27262 Carlton Oaks Street, Murrieta, California 92562. Mr. Johnson sometimes uses the email address ajo92584@gmail.com and telephone number 951-723-7363 to conduct Defendants' credit identity theft and debt collection scam. Mr. Johnson is an owner, officer, member, manager, employee and agent of JDM. Mr. Johnson uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Johnson regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Johnson is a "debt collector" as the term is defined and used in the FDCPA. Mr. Johnson is a "regulated person" as the term is defined and used in MRCPA. Alternatively, Mr. Johnson is a "collection agency" and "licensee" as the terms are defined and used in MOC.

17. Mr. Johnson (a) created the collection policies and procedures used by JDM and its employees and agents, in connection with their efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of JDM, (c) oversaw the application of the collection policies and procedures used by JDM and its employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by JDM and its employees and agents, to collect debts from consumers, including the tactics and scripts that were used to collect an alleged debt from Plaintiff as stated in this Complaint, (e) ratified the unlawful debt collection practices and procedures used by JDM and its employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by JDM and its employees and agents, in connection with their common efforts to collect an alleged debt from Plaintiff as stated in this Complaint.

18. Mr. Johnson directly and indirectly participated in the efforts to collect an alleged debt from Plaintiff that are described in this Complaint.

19. Mr. Johnson directly and indirectly participated in the acquisition, disclosure and use of Plaintiff's private, personal, financial and account information, without a permissible purpose, as described in this Complaint.

20. On July 17, 2025, Mr. Johnson formed non-party Michael-Duane Wealth Advisors Incorporated, a Wyoming corporation. On June 29, 2026, Mr. Johnson filed the company's annual report, falsely representing that the company's "Principal Office Address" is a private mailbox in Cheyenne, Wyoming. It will need to be determined in discovery whether Michael-Duane Wealth Advisors Incorporated participated in the efforts to collect an alleged debt from Plaintiff, as described in this Complaint.

21. Defendant Heather Lee Visciotti is a natural person, age 38, purportedly residing at 8262 Money Lane, Fort Worth, Texas 76126. Ms. Visciotti sometimes uses the email address hvisciotti@outlook.com to conduct Defendants' credit identity theft and debt collection scam. Ms. Visciotti is a manager, employee and agent of JDM. Ms. Visciotti uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Ms. Visciotti regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Ms. Visciotti is a "debt collector" as the term is defined and used in the FDCPA. Ms. Visciotti is a "regulated person" as the term is defined and used in MRCPA. Alternatively, Ms. Visciotti is a "collection agency" and "licensee" as the terms are defined and used in MOC.

22. Ms. Visciotti uses the unregistered alias "Bella Romano" when communicating with consumers in furtherance of Defendants' credit identity and debt collection scam.

23. Ms. Visciotti (a) created the collection policies and procedures used by JDM and its employees and agents, in connection with their efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of JDM, (c) oversaw the application of the collection policies and procedures used by JDM and its employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by JDM and its employees and agents, to collect debts from consumers, including the tactics and scripts that were used to collect an alleged debt from Plaintiff as stated in this Complaint, (e) ratified the unlawful debt collection practices and procedures used by JDM and its employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by JDM and its employees and agents, in connection with their common efforts to collect an alleged debt from Plaintiff as stated in this

Complaint.

24. Ms. Visciotti directly and indirectly participated in the efforts to collect an alleged debt from Plaintiff that are described in this Complaint.

25. Ms. Visciotti directly and indirectly participated in the acquisition, disclosure and use of Plaintiff's private, personal, financial and account information, without a permissible purpose, as described in this Complaint.

26. Defendants use the unregistered alias "Document Delivery Services" when communicating with consumers in furtherance of Defendants' credit identity and debt collection scam.

27. Defendants and their employees and agents have conducted their credit identity theft and debt collection scam using multiple telephone numbers, including: 307-735-8450; 888-491-7798; 888-611-2691; 888-679-2051; and 888-713-0728.

28. Defendants use a Merchant Account that they have established in the name of "Marathon Financial," located in California, with the telephone number 800-940-6918, to receive credit card and debit card payments from Defendants' victims, and then distribute the money from the Merchant Account to the participants in the scam. The application that was filed by Defendants with the Acquiring Bank to create the Merchant Account, as well as the related monthly statements and other account records, will need to be obtained in discovery by subpoena to the Acquiring Bank, so that Plaintiff can identify and pursue the other entities involved in Defendants' credit identity theft and debt collection scam.

29. An entity that itself meets the definition of debt collector is liable for the unlawful collection activities carried out by another debt collector on its behalf. *See, e.g., Pollice v.*

*National Tax Funding, L.P.,* 225 F.3d 379, 404-06 (3d Cir.2000); *Janetos v. Fulton Friedman & Gullace, LLP,* 825 F.3d 317, 325-26 (7th Cir.2016); *Fox v. Citicorp Credit Services, Inc.,* 15 F.3d 1507, 1516 (9th Cir.1994); *Wadlington v. Credit Acceptance Corp.,* 76 F.3d 103, 108 (6th Cir.1996); *Verburg v. Weltman, Weinberg & Reis Co., LPA et al.,* No. 1:13-cv-1328, 2016 WL 1273349, *7-8 (W.D. Mich. Mar. 28, 2016).

30. A shareholder, owner, officer, member, manager, employee or agent of a corporate debt collector can be held liable for violating the FDCPA, without piercing the corporate veil, by being directly involved in the day-to-day operation of the company, including the training and managing of employees, reviewing or supervising the review of accounts, materially participating in the activities of the company, supervising collection activities, overseeing compliance with applicable collection laws, ratifying unlawful acts, and the like, for the reason that each such individual is himself a "debt collector" within the statutory definition, namely, each is a "person" in a business, "the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). *See Kistner v. Law Offices of Michael P. Margelefsky, LLC,* 518 F.3d 433, 435-438 (6th Cir. 2008); *Russell v. Goldman Roth Acquisitions, LLC,* 847 F.Supp.2d 994, 1004-06 (W.D.Mich. 2012).

## IV. Facts

31. On or about October 17, 2007, Plaintiff Angela Meade opened a credit card account with Orchard Bank/HSBC Card Services ("|HSBC"). Plaintiff used the account exclusively to purchase goods and services for personal, family and household purposes, including paying for groceries, gasoline, clothing and personal services. Plaintiff never used the

account for any business purposes. Plaintiff did not own any business during the time she used the account. Plaintiff never took any business expenses on Plaintiff's federal or state income tax returns in connection with Plaintiff's use of the account. Plaintiff was never reimbursed by any employer for any purchases made with the account. Any resulting obligation of Plaintiff to pay money to HSBC or any other entity in connection with Plaintiff's use of the account was a "debt" as the term is defined and used in the FDCPA, MRCPA and MOC.

32. In September of 2009, Plaintiff became unable to repay her debt to HSBC and the account went into default.

33. In late 2009, HSBC charged off Plaintiff's account and related debt.

34. Plaintiff did not make any payment on the charged-off debt for more than six years, and the debt became no longer judicially enforceable by operation of the applicable Michigan statute of limitations. Stated differently, the debt became time-barred.

35. In or after September of 2009, the account and related charged-off debt were purchased by non-party National Credit Adjusters, L.L.C. ("NCA").

36. In June of 2012, NCA sold the charged-off account and related debt to a debt collection entity named Crown Funding Company, LLC ("Crown"), a Wyoming limited liability company, also operating as Aquinox Capital, LLC, a Delaware limited liability company.

37. On July 22, 2013, Crown, and its owners/operators Thai Han, Jim Tran Phelps and Keith Hua, along with other companies and persons, were sued and put into a receivership by the Federal Trade Commission for running a large debt collection scam. *FTC v. Asset & Capital Management Group et al.,* U.S. District Court, Central District of California, Case No. 8:13-cv-01107-DFS-JC (the "FTC Action"). According to the FTC, the defendants were third-party debt

collectors that purchased large portfolios of past-due consumer debt that they then collected by telephone through more than twenty boiler rooms they operated under fictitious names, and with more than five hundred individual collectors calling consumers and pretending to be law enforcement officers, process servers or attorneys. The collectors used scripts that falsely stated that the consumers had been or was about to be sued, and falsely threatened that unless the consumers immediately agreed to pay money to defendants, the consumers would suffer various and imminent adverse consequences, including that the consumers would be served with process at home or a place of employment, arrested, jailed, have wages garnished, and have property seized.

38. On July 24, 2013, the court in the FTC Action issued a temporary restraining order ("TRO") and froze the assets of Crown, Mr. Han, and the other defendants, which included all consumer accounts owned by Crown and the other defendants.

39. On July 31, 2013, the Receiver went to one of Crown's disclosed business locations and waited for a locksmith to arrive to open the suite so that the Receiver could seize assets and records pursuant to the TRO. According to the Receiver, while he waited in the parking lot, he observed Mr. Han arrive unannounced and in violation of the TRO, carrying folded banker boxes and intending to remove assets, computer equipment and records from an adjoining and undisclosed office suite that was being used by Crown and the other defendants to run their debt collection scam.

40. On February 4, 2014, the Receiver filed documents with the court in the FTC Action, stating that the Receiver had identified a portfolio of 391,606 consumer accounts owned by Crown, with a face value of $469,221,321.84, and seeking guidance from the court as to

whether the Receiver should sell accounts.

41. On May 19, 2014, the court in the FTC Action entered a stipulated and final order for permanent injunction and settlement of claims against Crown, Mr. Han, Mr. Phelps, Mr. Hua and others, permanently enjoining and banning each of them from engaging in any debt collection activities, including the sale or any consumer debts. The court's order also permanently restrained and enjoined the "defendants, and their officers, agents, servants, employees and attorneys, and those persons or entities in active concert or participation with any of them" (including Jason Lam) from "disclosing, using, or benefitting from consumer information, including the name, address, telephone number, email address, social security number, other identifying information, or any data that enable access to a customer's account (including a credit card, bank account, or other financial account) of any person that defendants obtained prior to entry of this order in connection with the collection or attempted collection of any debt."

42. On July 7, 2014, the Receiver filed documents with the court in the FTC Action, stating that the Receiver had entered into a broker arrangement with a consumer debt broker named DHC Debt, LLC ("DHC"), doing business as DHC Business Solutions, 3107 D Main Street, Manchester, Maryland 21102, in order to analyze, value and sell the portfolio of 391,606 consumer accounts owned by Crown. The Receiver reported that DHC had been given access to the entire, unmasked portfolio of Crown accounts, but after reviewing a portion of the accounts, DHC concluded that it was not interested in brokering the sale of the Crown accounts because the accounts had been altered and the portfolio "lacked baseline credibility."

43. The Receiver subsequently agreed that the entire portfolio of Crown accounts

should not be resold to any entity. On July 30, 2014, the court in the FTC Action entered an order terminating all efforts by the Receiver to sell the portfolio of 391,606 consumer accounts owned by Crown, including Plaintiff's HSBC account.

44. On January 26, 2015, the Receiver filed its Final Account and Report in the FTC Action, stating that all efforts to sell the portfolio of 391,606 consumer accounts owned by Crown had been terminated. On February 4, 2015, the court in the FTC Action entered an order discharging the Receiver and effectively making it unlawful going forward for anyone to attempt to collect any of the 391,606 consumer accounts that had been involved in the receivership.

45. By operation of the FTC Action and related Crown receivership, Plaintiff's HSBC account and any related debt, which was purchased by Crown, is no longer enforceable by any entity.

46. Despite the order and permanent injunction issued by the court in the FTC Action, and despite the Receiver's abandonment of all claims related to the portfolio of 391,606 consumer accounts owned by Crown, information regarding Plaintiff's defunct HSBC account, as well as personal and financial information regarding Plaintiff, was stolen and unlawfully used to create counterfeit credit card accounts in Plaintiff's name, which were then sold and resold among scam operators, for the purpose of coercing the payment of money from Plaintiff on an account that the scam operators have no right to collect and that Plaintiff does not owe.

47. Plaintiff is a victim of credit identity theft.

48. Since 2017, Plaintiff has been periodically contacted by more than a dozen different credit identity thieves and falsely threatened with litigation, prosecution and other adverse consequences in efforts to coerce Plaintiff to pay money to the credit identity thieves to

supposedly satisfy a debt that Plaintiff did not owe and the credit identity thieves had no right to collect.

49. As described below, the Defendants named in this Complaint are the most recent credit identity thieves and debt collection scam operators to acquire stolen information related to Plaintiff's counterfeit HSBC account, as well as personal and financial information regarding Plaintiff, and use that stolen information to contact and falsely threaten Plaintiff with prosecution, litigation and other adverse consequences unless Plaintiff paid Defendants money regarding a counterfeit account to supposedly satisfy a debt that Plaintiff does not owe and Defendants have no right to collect.

50. On October 6, 2026 at approximately 10:23 a.m. EDT, Defendants placed a call from telephone number 313-217-8052 to Plaintiff's husband's cellular telephone with a "616" West Michigan area code, and left the following pre-recorded and computer-generated message on Plaintiff's husband's voice mail: "This message is solely intended for Angela M. Meade regarding File Number 2026-FNS-324964 in reference to the address on 79 Rogue River View Drive Northeast. I am calling on behalf of Document Delivery Services. We have been retained to schedule and delivery legal documents to you between the hours of 8:00 a.m. and 4:00 p.m., either at your home or place of employment. There will only be two attempts made to deliver the documentation, which will also require a signature as proof of delivery. If we are unable to deliver the documents after two attempts, it will be classified as a failed action to serve, which will result in the pending matter to proceed further with or without your consent. If you have any questions or need to reschedule the delivery, you will need to contact the firm directly at 844-838-1168 and reference your file number. Please be advised this call has been logged and

submitted as proof that you have been notified of this pending matter. Have a good day."

51. On October 6, 2026 at approximately 10:30 a.m. EDT, Defendants placed a call from telephone number 517-208-9413 to Plaintiff's cellular telephone with a "616" West Michigan area code, and left the following pre-recorded and computer-generated message on Plaintiff's voice mail: "This message is solely intended for Angela M. Meade regarding File Number 2026-FNS-324964 in reference to the address on 79 Rogue River View Drive Northeast. I am calling on behalf of Document Delivery Services. We have been retained to schedule and delivery legal documents to you between the hours of 8:00 a.m. and 4:00 p.m., either at your home or place of employment. There will only be two attempts made to deliver the documentation, which will also require a signature as proof of delivery. If we are unable to deliver the documents after two attempts, it will be classified as a failed action to serve, which will result in the pending matter to proceed further with or without your consent. If you have any questions or need to reschedule the delivery, you will need to contact the firm directly at 844-838-1168 and reference your file number. Please be advised this call has been logged and submitted as proof that you have been notified of this pending matter. Have a good day."

52. On October 6, 2026, the requested return call was made to Defendants at telephone number 844-838-11668, which was answered by Defendants' employee and agent, who identified herself as "Bella Romano," Plaintiff's "Case Manager," with "Marathon Legal Group," and made the following statements:

a) Plaintiff's "Case Number" is 2026-FNS-324964.

b) It does look like there's a judgment being filed.

c) Let's see what this is for. It looks like there's a judgment being filed in

regards to an account that was left defaulted. It's a MasterCard with HSBC Household Orchard Bank. Are you aware of getting any paperwork about that in the mail back in August, beginning of September?

d) Our firm, Marathon Legal Group, we are a litigation firm, and it looks like we were retained to apply for a default judgment for $3,919.75 regarding this defaulted MasterCard with Household Orchard Bank.

e) This card probably went through anywhere from like three to five or six third-party collection agencies before getting to this point. However, it looks like it was just never settled on a voluntary basis, so it was turned over for our firm to apply for a default judgment.

f) We have until the end of February to file this judgment, and as long as it's granted the day before that February 12th comes around, that will open up a ten-year window to garnish wages, bank account levy, motor vehicle lien, property lien, wage garnishments, things along those lines.

g) The account number is 5440455019760215.

h) The statute of limitations on here would start like when the account went into collections and it's valid on here until February 12th of 2027. So as long as we have that judgment filed before that date, that will open up a ten-year window to do wage garnishment, bank account levy, in order to recover the funds on behalf of the creditor.

i) Before that happens, we sent a demand letter, it was sent on August 19th, we never got a response, so we're just doing a follow-up right now,

because normally we hear something back, and to not hear anything back from an attorney either, that is why we are doing a courtesy call.

j) Once the account is paid in full we do report it to the credit bureaus as a zero balance.

k) You're speaking to Marathon Legal Group. We're pursuing the judgment on behalf of Household Orchard Bank.

l) Payments will show up on your bank statement as JDM Marathon Solutions.

m) My direct line is 858-683-0611.

53. On October 6, 2026, Defendants used the address clientsupport@marathoncollect.com to send an email captioned "AUTHORIZATION & PAYMENT AGREEMENT" to Plaintiff via Docusign, that linked to a three-page document on the letterhead of "Marathon Legal Advocate Work," falsely stated Plaintiff owed money to HSBC in connection with a counterfeit credit card account, and falsely stated that HSBC was Defendants' "CLIENT." The document also falsely implied that Plaintiff's credit score was being harmed by the supposedly unpaid debt, and would be improved if Plaintiff paid money to Defendants. A copy of the email and document are attached to this Complaint as Exhibit A.

54. On October 6, 2026, in response to Defendants' false threats of litigation and other adverse consequences, Plaintiff authorized a debit card payment to Defendants, in the amount of $150.00, which Defendants caused to be deposited in Defendants' Merchant Account established and maintained in the name "Marathon Financial," telephone number 800-940-6918, located in California. The payment posted on October 7, 2026.

55. Defendants' repeated use of the described Merchant Account to receive credit card and debit card payments from consumers defrauded by Defendants violated the terms of the agreements between Defendants and Defendants' acquiring bank and Defendants' ISO and payment processor, violated the terms of the agreements between Defendants and Visa and MasterCard, and disqualifies Defendants from maintaining a Merchant Account and accessing the banking system.

56. On October 6, 2026, Defendants used the address clientsupport@marathoncollect.com to send an email to Plaintiff, captioned "Client Billing Statement 2026 from Marathon Legal Advocate Work," that acknowledged Defendants' receipt of Plaintiff's payment of $150.00. A copy of the email is attached to this Complaint as Exhibit B.

57. On October 8, 2026, Defendants placed a call from telephone number 616-207-7674 to Plaintiff's cellular telephone with a "616" West Michigan area code, and left the following pre-recorded and computer-generated message on Plaintiff's voice mail: "This message is solely intended for Angela M. Meade regarding File Number 2026-FNS-324964 in reference to the address on 79 Rogue River View Drive Northeast. I am calling on behalf of Document Delivery Services. We have been retained to schedule and delivery legal documents to you between the hours of 8:00 a.m. and 4:00 p.m., either at your home or place of employment. There will only be two attempts made to deliver the documentation, which will also require a signature as proof of delivery. If we are unable to deliver the documents after two attempts, it will be classified as a failed action to serve, which will result in the pending matter to proceed further with or without your consent. If you have any questions or need to reschedule the delivery, you will need to contact the firm directly at 844-867-6241 and reference your file

number. Please be advised this call has been logged and submitted as proof that you have been notified of this pending matter. Have a good day."

58. A Bank Identification Numbers or "BIN" is the initial four to six numbers that appear on a credit card. The BIN is a part of a numbering system developed by the American National Standards Institute to uniquely identify the financial institution that issues a specific credit card.

59. The BIN (544045) for Plaintiff's counterfeit account is the BIN for a "Capital One MasterCard World Credit Card," supposedly issued by Capital One Bank, N.A.

60. On October 9, 2026, a representative for Capital One Bank, N.A. confirmed that Plaintiff has never had a credit account with Capital One Bank, N.A. with the account number 5440455019760215.

61. On October 9, 2026, a representative for Capital One Bank, N.A. confirmed that the credit card account with the account number 5440455019760215 (being the supposed account that Defendants attempted to collect from Plaintiff) is counterfeit.

62. The above-described threats and representations made by Defendants and Defendants' employees and agents were false and part of a scripted and unlawful debt collection practice that is ongoing and is currently being perpetrated by Defendants to coerce the payment of money from thousands of consumers across the country through the use of false threats, intimidation, and unlawful harassment, often times on debts that are counterfeit, time-barred, or not owed, and through the use of unlawfully obtained account and personal information.

63. Defendants have regularly, repeatedly and falsely communicated to Plaintiff and other consumers that Defendants are lawyers, and have repeatedly engaged in the unauthorized

practice of law, a crime. Cal. Bus. & Prof. Code § 6126 (West 2021). It is an express violation of the FDCPA to commit a crime in connection with the collection of any debt.

64. Defendants and their employees and agents regularly, repeatedly and falsely communicated to Plaintiff and other consumers that Defendants are lawyers, and engaged in the unauthorized practice of law in Michigan, a crime.

> A person shall not practice law or engage in the law business, shall not in any manner whatsoever lead others to believe that he or she is authorized to practice law or to engage in the law business, and shall not in any manner whatsoever represent or designate himself or herself as an attorney and counselor, attorney at law, or lawyer, unless the person is regularly licensed and authorized to practice law in this state. A person who violates this section is guilty of contempt of the supreme court, . . ." M.C.L. 600.916(1). "[P]unishment for contempt may be a fine of not more than $7,500.00, or imprisonment which . . . shall not exceed 93 days, or both[.]" M.C.L. 600.1715(1).

> It shall be unlawful for any corporation or voluntary association to . . . assume, use or advertise the title of lawyer or attorney, attorney-at-law, or equivalent terms in any language in such manner as to convey the impression that it is entitled to practice law, . . . or to advertise that either alone or together with or by or through any person whether a duly and regularly admitted attorney-at-law, or not, it has, owns, conducts or maintains a law office or an office for the practice of law, or for furnishing legal advice, services or counsel." M.C.L. 450.681. Any corporation or voluntary association violating the provisions of this section, and every officer, trustee, director, agent or employee of such corporation or voluntary association who directly or indirectly engages in any of the acts herein prohibited or assists such corporation or voluntary association to do such prohibited acts shall be guilty of a misdemeanor, and shall be punished by a fine of not to exceed 1,000 dollars or by imprisonment for a period of not to exceed 6 months, or by both[.]" *Id.*

It is a violation of the FDCPA to commit a crime in connection with the collection of any debt.

65. Defendants and their employees and agents failed to meaningfully identify themselves and their companies.

66. Defendants and their employees and agents falsely represented and inflated the amount of Plaintiff's alleged debt.

67. Defendants and their employees and agents falsely represented that Plaintiff owed

a debt that is not owed.

68. Defendants and their employees and agents falsely represented the identity of the entity to whom the alleged debt is owed.

69. Defendants and their employees and agents falsely represented that they were retained by the owner of the account to collect the alleged debt.

70. Defendants and their employees and agents wrongfully obtained and wrongfully used personal information regarding Plaintiff, for the purpose of communicating with Plaintiff and Plaintiff's relatives, in an effort to coerce the payment of money from Plaintiff.

71. Defendants and their employees and agents falsely represented that they are lawyers and a law firm.

72. Defendants and their employees and agents falsely represented that they are lawyers and a law firm, retained by HSBC, to file a debt collection lawsuit and obtain a money judgment against Plaintiff.

73. Defendants and their employees and agents falsely represented and falsely implied that lawyers were involved in the efforts to collect the alleged debt.

74. Defendants and their employees and agents falsely represented and falsely implied that lawyers would become involved in the efforts to collect the alleged debt.

75. Defendants and their employees and agents falsely represented and falsely implied that a lawsuit was going to be filed against Plaintiff to collect the alleged debt.

76. Defendants and their employees and agents falsely represented and falsely implied that a lawsuit already had been filed against Plaintiff to collect the alleged debt.

77. Defendants and their employees and agents wrongfully threatened to file a lawsuit

against Plaintiff to collect an alleged debt that is past the statute of limitations and known to be time-barred debt.

78. Defendants did not intend to file a lawsuit against Plaintiff in any court in efforts to collect the alleged debt.

79. No Defendant has ever filed any lawsuit in any court to collect any debt from any consumer.

80. Defendants and their employees and agents falsely represented and falsely implied that a judgment would be entered against Plaintiff.

81. Defendants and their employees and agents falsely represented and falsely implied that the courts were involved in Defendants' efforts to collect the alleged debt from Plaintiff.

82. Defendants and their employees and agents falsely represented and falsely implied that liens were going to be placed against Plaintiff's real property, motor vehicles, and other assets.

83. Defendants and their employees and agents falsely represented and falsely implied that Plaintiff's wages were going to be garnished.

84. Defendants and their employees and agents falsely represented and falsely implied that Plaintiff's bank accounts were going to be levied.

85. Defendants and their employees and agents falsely represented and falsely implied that a process server was being dispatched to Plaintiff's residence and place of employment to serve Plaintiff with a court summons.

86. Defendants and their employees and agents falsely represented and falsely implied

that derogatory information regarding the account and alleged debt was harming, and would continue to harm, Plaintiff's credit score, unless Plaintiff paid money to Defendants.

87. Defendants and their employees and agents falsely represented and falsely implied that Plaintiff's credit score would improve if Plaintiff paid money to Defendants.

88. The FDCPA states that it is unlawful for a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any debt. 15 U.S.C. § 1692d.

89. The FDCPA states that it is unlawful for a debt collector to use criminal means to harm the reputation of any person. 15 U.S.C. § 1692d(1).

90. The FDCPA states that it is unlawful for a debt collector to place a telephone call without meaningful disclosure of the caller's identity. 15 U.S.C. § 1692d(6).

91. The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that the debt collector is vouched for or affiliated with the United States or any State. 15 U.S.C. § 1692e(1).

92. The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the character, amount, or legal status of any debt. 15 U.S.C. § 1692e(2)(A).

93. The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the compensation which may be lawfully received by any debt collector for the collection of any debt. 15 U.S.C. § 1692e(2)(B).

94. The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that any individual is an attorney or that any communication is from any attorney.

15 U.S.C. § 1692e(3).

95. The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action. 15 U.S.C. § 1692e(4).

96. The FDCPA states that it is unlawful for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken. 15 U.S.C. § 1692e(5).

97. The FDCPA states that it is unlawful for a debt collector to communicate to any person credit information which is known or which should be known to be false. 15 U.S.C. § 1692e(8).

98. The FDCPA states that it is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt. 15 U.S.C. § 1692e(10).

99. The FDCPA states that it is unlawful for a debt collector to communicate in a communication with a consumer to fail to disclose that the communication is from a debt collector. 15 U.S.C. § 1692e(11).

100. The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that documents are legal process. 15 U.S.C. § 1692e(13).

101. The FDCPA states that it is unlawful for a debt collector to use any business, company, or organization name other than the true name of the debt collector's business, company, or organization. 15 U.S.C. § 1692e(14).

102. The FDCPA states that it is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt. 15 U.S.C. § 1692f.

103. The FDCPA states that it is unlawful for a debt collector to collect any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law. 15 U.S.C. § 1692f(1).

104. Defendants and their employees and agents have violated the FDCPA, 15 U.S.C. §§ 1692d, 1692d(1) and (6), 1692e, 1692e(1), (2)(A), (2)(B), (3), (4), (5), (8), (10), (11), (13) and (14), and 1692f and 169f(1).

105. The FDCPA requires that, within five days of the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the required information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing the information mandated by 15 U.S.C. § 1692g(a).

106. Defendants and their employees and agents failed to timely send to Plaintiff a notice containing the information required by 15 U.S.C. § 1692g(a).

107. Defendants and their employees and agents violated the Identity Theft and Assumption Deterrence Act, 18 U.S.C. § 1028, in their efforts to coerce the payment of money from Plaintiff. It is an express violation of the FDCPA to commit a crime in connection with efforts to collect an alleged debt.

108. Each Defendant and each Defendant's employees, managers, owners, agents, affiliates and co-conspirators had knowledge of, approved of, and ratified the use of the unlawful debt collection practices that are described in this Complaint.

109. Defendants and their employees, managers, owners, agents, affiliates and co-

conspirators each have intentionally and wilfully violated the FDCPA.

110. The FDCPA states in part, “It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors” and “to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged.” 15 U.S.C. § 1692(e).

111. Defendants and their employees, managers, owners, agents, affiliates and co-conspirators, to increase their business and profits, have knowingly chosen to use debt collection practices that violate the FDCPA, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

112. In connection with efforts to collect an alleged debt from Plaintiff, Defendants obtained and used personal information regarding Plaintiff from an internet skip-tracing database, such as LexisNexis Risk Management, Inc. (Accurint), TransUnion Risk and Alternative Data Solutions, Inc. (TLO), UDT Group, LLC (Delvepointe), or Interactive Data, LLC.

113. The database used by Defendants was derived in part from non-public motor vehicle records and searches made with the database are subject to the terms of the Drivers Privacy Protection Act. Subscribers to the database must sign an application stating that the subscriber will comply with the DPPA. Further, every time a subscriber logs on to use the database, the subscriber is confronted with a screen that requires the subscriber to affirmatively state the permissible purpose under the DPPA for which the subscriber is requesting the personal information.

114. The DPPA was enacted in response to growing concerns over the ease with which stalkers and other criminals could obtain personal information from state departments of motor vehicles. *Reno v. Condon*, 528 U.S. 141, 143–44, 120 S.Ct. 666, 145 L.Ed.2d 587 (2000).

115. The DPPA states:

> (a) Procurement for unlawful purpose. – It shall be unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title.
>
> (b) False representation. – It shall be unlawful for any person to make false representation to obtain any personal information from an individual's motor vehicle record.

18 U.S.C. § 2722.

116. The DPPA also states:

> "personal information" means information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code) [and] telephone number . . . .

18 U.S.C. § 2725(3).

117. The DPPA also states:

> A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter, shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court.

18 U.S.C. § 2724(a).

118. The DPPA enumerates the only "permissible uses" for which personal information may be obtained. 18 U.S.C. § 2721(b).

119. Defendants did not have a "permissible use" under the DPPA to obtain, disclose or use personal information regarding Plaintiff.

120. Defendants used the database to obtain, disclose and use personal information

regarding Plaintiff.

121. Defendants made a false representation to the provider of the database to obtain personal information regarding Plaintiff from motor vehicle records.

122. Alternatively, the entity that obtained Plaintiff's personal information from the database and disclosed the personal information to Defendants, made a false representation to the provider of the database to obtain the personal information.

123. It is a crime to knowingly violate the DPPA. 18 U.S.C. § 2723. It is an express violation of the FDCPA to commit a crime in connection with the collection of any debt.

124. Defendants knowingly obtained, disclosed and used Plaintiff's information, from a motor vehicle record, for a purpose not permitted under the DPPA, and with willful or reckless disregard for the law.

125. No Defendant had Plaintiff's consent, permission, authorization or waiver to obtain the personal information from the database.

126. A civil action under the DPPA may be commenced within four years after the cause of action accrues. 28 U.S.C. § 1658(a); *Rasmusson v. Chisago County,* , 991 F.Supp.2d 1065, 1079 (D.Minn. 2014).

127. The DPPA imposes vicarious liability on principals for the acts of the actions of their agents who act with apparent authority. *Margan v. Niles,* 250 F.Supp.2d 63, 77 (N.D.N.Y. 2003).

128. Defendants, and their employees and agents, each have intentionally and wilfully violated the DPPA.

129. Each Defendant was aware, or should have been aware, of the unlawful debt

collection practices being used by the other Defendants to collect alleged debts.

130. As an actual and proximate result of the acts and omissions of Defendants and their employees and agents, Plaintiff has suffered actual damages and injury, including but not limited to, invasion of privacy, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, anxiety, loss of sleep, and suffering, for which Plaintiff should be compensated in an amount to be established at trial.

## V. Claims for Relief

### Count 1 – Fair Debt Collection Practices Act

131. Plaintiff incorporates the foregoing paragraphs by reference.

132. Each Defendant has violated the FDCPA. Each Defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

a) Defendants violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

b) Defendants violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt;

c) Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from Plaintiff; and

d) Defendants violated 15 U.S.C. § 1692g.

**Wherefore,** Plaintiff seeks judgment against each Defendant for:

a) Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b) Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c) Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d) Such further relief as the court deems just and proper.

**Count 2 – Drivers Privacy Protection Act**

133. Plaintiff incorporates the foregoing paragraphs by reference.

134. Each Defendant has violated the DPPA, 18 U.S.C. § 2722(a) and (b).

**Wherefore,** Plaintiff seeks judgment against each Defendant for:

a) Actual damages, but not less than liquidated damages in the amount of $2,500.00, pursuant to 18 U.S.C. § 2724(b)(1);

b) Punitive damages pursuant to18 U.S.C. § 2724(b)(2);

c) Reasonable costs and attorneys' fees pursuant to18 U.S.C. § 2724(b)(3);

d) An injunction prohibiting Defendants from further obtaining or using Plaintiff's personal information, pursuant to 18 U.S.C. § 2724(b)(4);

e) An order requiring Defendants to provide Plaintiff with the original and all copies of any and all documents of any kind that contain any of Plaintiff's personal information, pursuant to 18 U.S.C. § 2724(b)(4); and

f) An injunction prohibiting Defendants from disseminating Plaintiff's personal information to any other entity, pursuant to 18 U.S.C. § 2724(b)(4).

**Count 3 – Michigan Regulation of Collection Practices Act**

135. Plaintiff incorporates the foregoing paragraphs by reference.

136. Each Defendant has violated the MRCPA. Each Defendant's violations of the MRCPA include, but are not necessarily limited to, the following:

a) Defendants violated M.C.L. § 445.252(a) by communicating with a debtor in a misleading or deceptive matter, including simulated judicial process;

b) Defendants violated M.C.L. § 445.252(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

c) Defendants violated M.C.L. § 445.252(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

d) Defendants violated M.C.L. § 445.252(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened, (ii) the legal rights of a creditor or debtor, and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, or sale of the debtor's property;

e) Defendants violated M.C.L. § 445.252(n) by using a harassing, oppressive, or abusive method to collect a debt; and

f) Defendants violated M.C.L. § 445.252(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** Plaintiff seeks judgment against each Defendant for:

a) Actual damages pursuant to M.C.L. § 445.257(2);

b) Treble the actual damages pursuant to M.C.L. § 445.257(2);

c) Statutory damages pursuant to M.C.L. § 445.257(2);

d) Reasonable attorney's fees and court costs pursuant to M.C.L. § 445.257(2); and

e) Equitable relief pursuant to M.C.L. § 445.257(1).

### Count 4 – Michigan Occupational Code

137. Plaintiff incorporates the foregoing paragraphs by reference.

138. Each Defendant has violated the MOC. Each Defendant's violations of the MOC include, but are not necessarily limited to, the following:

a) Defendants violated M.C.L. § 339.915(a) by communicating with a debtor in a misleading or deceptive matter, including simulated judicial process;

b) Defendants violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

c) Defendants violated M.C.L. § 339.915(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

d) Defendants violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened; (ii) the legal rights of a creditor or debtor; and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, attachment or sale of the debtor's property;

e) Defendants violated M.C.L. § 339.915(n) by using a harassing, oppressive, or abusive method to collect a debt; and

f) Defendants violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** Plaintiff seeks judgment against each Defendant for:

a) Actual damages pursuant to M.C.L. § 339.916;

b) Treble the actual damages pursuant to M.C.L. § 339.916;

c) Statutory damages pursuant to M.C.L. § 339.916;

d) Equitable relief pursuant to M.C.L. § 339.916; and

e) Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

Dated: October 22, 2026

/s/ Phillip C. Rogers
Phillip C. Rogers (P34356)
Attorney for Plaintiff
2851 Charlevoix Dr. SE, Ste. 205
Grand Rapids, MI 49546-7090
(616) 776-1176
ConsumerLawyer@aol.com